David B. Goldstein SBN 003410
Isidore Yetnikoff SBN 027594
**HYMSON GOLDSTEIN & PANTILIAT, P.C.**
14646 N. Kierland Boulevard, Suite 255
Scottsdale, Arizona 85254
Telephone: 480-991-9077
minutes@legalcounselors.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| WENDY K. ERDWURM,<br><br>Plaintiff,<br><br>v.<br><br>IRIDIUM COMMUNICATIONS, INC., formerly known as IRIDIUM SATELLITE, LLC,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br>-AND-<br>**JURY DEMAND**<br>(Employment Discrimination) |

Plaintiff, Wendy Erdwurm ("Wendy"), by and through her undersigned counsel, and for her Complaint with Jury Demand against Defendant, Iridium Communications, Inc. ("Defendant"), states as follows:

### PARTIES AND JURISDICTION

1. Wendy is a married woman and a resident of Phoenix, Arizona and this District.

2. Defendant is a limited liability company organized under the laws of Delaware and authorized to do business in Maricopa County, Arizona. Its principal place of business, known as an operations center, is located in this District at 8440 South River Parkway, Tempe, Arizona.

3. This is an action for damages based on unlawful employment practices committed by Defendant, and jurisdiction of this court is invoked pursuant to Title VII of the Civil Rights Act of 1964, § 706, and 28 U.S.C.A. § 1331.

4. The claims for relief set forth in the First and Second Claims for Relief in this Complaint are derived from a common nucleus of operative facts involving substantially identical issues of fact and law. The entire action constitutes a single case which ordinarily would be tried in one judicial proceeding. For the interests of judicial economy, convenience and fairness and in order to avoid unnecessary duplication and multiplicity of actions, this Court's jurisdiction over Count Two is pendent to this Court's jurisdiction over Count One.

5. Venue is proper in this District pursuant to 28 U.S.C.A. § 1391. Defendant is found in this District, and the events giving rise to the claims asserted in this Complaint arose in this District and Division.

## FIRST CLAIM FOR RELIEF

### (Employment Discrimination Under Federal Law)

6. Plaintiff repeats and re-alleges the allegations contained in the previous paragraphs of this Complaint; those allegations are incorporated by reference in this paragraph.

7. Defendant is engaged in the provision of satellite communications services throughout the United States and the world.

8. Wendy brings this action pursuant to the provisions of Title VII of the Civil Rights Act of 1964, § 701 *et seq.* (42 U.S.C.A. § 2000e *et seq.*)(hereinafter "Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621 *et seq.* (hereinafter the "ADEA"), for damages to compensate her for the economic loss and other damages caused by Defendant's unlawful employment practices committed against Wendy because Wendy is female, over the age of 40, and of the Jewish religion, all of which are groups protected by law.

9. Wendy was hired by Iridium, LLC, Defendant's predecessor entity, on or about October 1999 and began work for Defendant as a Data Warehouse Specialist.

HYMSON GOLDSTEIN & PANTILIAT, P.C.
Attorneys & Counselors
14646 N. Kierland Boulevard, Suite 255
Scottsdale, Arizona 85254
Telephone: 480-991-9077 / Facsimile: 480-443-8854

018270:5/14363-03:PLEADINGS
746321v5

10. Defendant's predecessor filed a petition in bankruptcy in March 2000 and Wendy went to work for another employer.

11. Defendant reorganized and Wendy was hired by Iridium Satellite, LLC, Defendant's predecessor, as an Oracle Database Administrator on or about January 2001.

12. Defendant offered an Initial Public Offering of its corporate shares and changed its name to Iridium Communications, Inc. and legal status from a limited liability company to a corporation in or around October 2009.

13. On July 24, 2008, Wendy filed a Complaint (540-2008-03909) with the Equal Employment Opportunity Commission ("EEOC") in Phoenix, Arizona.

14. The EEOC Complaint alleges employment discrimination against Wendy based on gender and age, which are protected classes.

15. The EEOC Complaint was filed with the EEOC within 180 days after the unlawful employment practices occurred. The Defendant's practices in violation of Title VII continued to occur with respect to Wendy until October 16, 2009, when Wendy was forced to leave Defendant's employ.

16. These occurrences are sufficient to satisfy the jurisdictional prerequisites of Title VII § 706 (42 U.S.C.A. § 2000e-5).

17. On or about September 18, 2009, Defendant announced and planned a company-wide initiative to hold Employee Focus Groups to address employee working conditions and improve them.

18. Defendant planned the Employee Focus Group at the Tempe, Arizona location in which Wendy worked for September 28, 2009.

19. Defendant planned and held the Employee Focus Group on Yom Kippur, the holiest day of the year on the Jewish calendar.

20. Matt Desch ("Desch") is the Chief Operating Officer of Defendant.

3

018270:5/14363-03:PLEADINGS
746321v5

21. On September 21, 2009, Wendy informed Desch that the Tempe, Arizona Employee Focus Group was scheduled on Yom Kippur and would thus exclude the entire group of Jewish employees, a protected group of persons.

22. Wendy informed Desch that she could not attend the Employee Focus Group without violating the fundamental tenets of her religion and requested the date of the Employee Focus Group be changed to accommodate her religious observance.

23. Desch refused to accommodate Wendy's religious observance and effectively denied Wendy the opportunity to participate in the Employee Focus Group.

24. Defendant selected Carl Washburn, a male employee younger than Wendy to participate in the Employee Focus Group.

25. Upon information and belief, Defendant retaliated against Wendy for filing a discrimination complaint with the EEOC and took additional adverse employment actions against her, including constructive discharge of her employment relationship on October 16, 2009.

26. On December 10, 2009, Wendy lodged a supplemental Complaint of Discrimination (540-2010-00658) against Defendant through the Arizona Attorney General's Office and presented to the EEOC for practices in violation of Title VII, the ADEA and Arizona law.

27. Defendant was aware of the Yom Kippur holiday, but maliciously sought to exclude Wendy from participating in the Employee Focus Group.

28. On the date of termination of Wendy's employment relationship with Defendant, Wendy was employed as an Oracle Database Administrator in Defendant's IT Department.

29. On the date of termination of Wendy's employment relationship, Wendy was responsible for managing the Oracle database portion of Defendant's application, the Oracle financial application, and for writing custom programs for customer billing and all other computer programs and systems.

4

018270:5/14363-03:PLEADINGS
746321v5

30. Defendant employs between 201 and 500 persons.

31. During the period of Wendy's employment, John McAlduff ("McAlduff") served as Director of the IT Department in which Wendy worked. Wendy reported to McAlduff, and he was her direct supervisor.

32. McAlduff has authority to hire new employees subject to the approval of higher management, to supervise all aspects of the Oracle Database Administrator work assignments, to engage in counseling, to deliver oral reprimands, and to make a record of any such discipline.

33. Wendy received exceptional performance reviews from McAlduff.

34. While Wendy was employed by Defendant, Desch and McAlduff created a hostile work environment by repeatedly subjecting Wendy to discrimination on the basis of her gender, religion and age.

35. Defendant succeeded in creating a hostile work environment, isolated Wendy and subjected her and others to a pattern of gender, age and religious discrimination.

36. McAlduff stunted Wendy's professional development, and intentionally obstructed Wendy from new corporate opportunities.

37. McAlduff unjustifiably and maliciously attempted to demote and transfer Wendy.

38. McAlduff maliciously painted Wendy in a false light with other employees and supervisors.

39. McAlduff maliciously reported to upper level management that Wendy refused to take on responsibility or failed to complete a task in a timely fashion when Wendy never did either in all her years of employment with Defendant.

40. McAlduff purposely avoided directly communicating with Wendy but directly communicated with other employees who were not in one of the protected groups of which Wendy is a member.

5

018270:5/14363-03:PLEADINGS
746321v5

41. McAlduff regularly gave informal feedback and freely communicated with other employees who were not members of the protected groups of which Wendy is a member, but never did so with Wendy.

42. McAlduff encouraged other employees in their aspirations of professional development and supported them when they requested assignments, but never did so with Wendy.

43. McAlduff purposely failed to give Wendy praise or recognition for her important contributions or significant achievements during employment with Defendant.

44. McAlduff has established a pattern of wantonly discriminating against women over the age of 40.

45. Specifically, Rita Stahl a woman over the age of 40 and, and a former employee of Defendant suffered under McAlduff's discriminatory conduct.

46. Upon information and belief, Rita Stahl was transferred and reassigned because McAlduff perpetrated gender and age discrimination against her.

47. Susan Baker, a former employee of Defendant, was a woman over the age of 40 that suffered gender and age discrimination at the hands of Defendant.

48. Upon information and belief, Susan Baker was constructively discharged from her employment with Defendant when Defendant succeeded in perpetrating employment discrimination and isolating Susan Baker to the point her suffering could no longer be tolerated.

49. Wendy was denied promotions, requested but was denied modifications of her title and deprived of opportunities for professional development, while others who were not members of the protected groups of which Wendy is a member received those promotions, titles and opportunities

50. Wendy was denied promotions and benefits commensurate with her knowledge, formal education and experience.

6

51. Wendy was the sole employee in the IT Department who voluntarily pursued and obtained outside of her employment duties training in new federal legislation known as Sarbanes-Oxley ("SOX") laws.

52. Wendy requested the opportunity to work on SOX matters but was denied her request.

53. McAlduff thereafter brought external SOX consultants to discuss compliance with all members of the IT Department, with the exception of Wendy and, on information and belief, the consultants were told not to engage in discussion with Wendy regarding SOX.

54. Defendant has a formal policy that encourages employees to request assignments they would enjoy or prefer to undertake. Generally, Defendant's employees are granted opportunities to work on projects of their interest.

55. As the only member of the IT Department with formal training in SOX, Wendy sought the opportunity for professional development by requesting an assignment to be involved in SOX implementation and compliance.

56. Without any conceivable reason or explanation, Wendy's request was denied while males, under the age of 40 were given that opportunity.

57. Defendant treated men, and particularly men under the age of 40, with substantially more favorable treatment.

58. Defendant's actions constituted arbitrary barriers to sexual equality in the workplace and with reckless indifference discriminated against Wendy.

59. Defendant capriciously or with reckless indifference denied Wendy appropriate and deserved modification to her job title.

60. On information and belief, Defendant discriminatorily denied Wendy compensation commensurate with compensation offered to other males of like education and experience.

7

018270:5/14363-03:PLEADINGS
746321v5

61. Defendant intentionally denied Wendy access to materials and tools essential to perform her employment duties.

62. Wendy was expected to respond to Defendant's database emergencies and perform her tasks while outside the office. Despite these demands placed on Wendy, Defendant refused to provide Wendy with a laptop computer or wireless card, while it did so for other males under the age of 40.

63. Defendant unlawfully placed terms, and conditions on Wendy's employment position.

64. Defendant forced Wendy to choose between observance of her religion and retaining her employment position.

65. Defendant constructively discharged Wendy after she stated she could not violate the tenets of her religious faith and belief for her employment.

66. Defendant perpetrated tangible, direct and detrimental effects on Wendy's employment that qualify as adverse employment actions.

67. Defendant's adverse employment actions affected Wendy's ability to perform her job and harmfully impacted her career.

68. Defendant's method of supporting its employees and encouraging professional growth is a primary source of discrimination that has resulted in an unfair denial of advancement opportunities to women over the age of 40 and particularly Wendy.

69. The Director of IT makes recommendations for professional advancement on the basis of an arbitrary and subjective analysis. No objective standards are used for this purpose. This arbitrary and subjective analysis, coupled with the fact that on information and belief nearly all of Defendant's employees are males under the age of 40, constitutes a self-perpetuating situation in which women over the age of 40 are seldom, if ever, objectively considered for well-deserved career advancement.

8

70. Wendy worked for Defendant from 1999 to 2000 and 2001 to 2009. Wendy's record of employment during that period was above average and during that period Wendy consistently strived to improve herself and to establish her qualifications for advancement.

71. Wendy's work record clearly indicates she was qualified to serve as Oracle Database Administrator and to become eligible for career advancement. Yet, due to the inherently discriminatory system of promotion used and approved of by Defendant, Wendy was never promoted in nearly 10 years of work for Defendant.

72. Due to Defendant's wrongful job advancement practice, Wendy was denied career advancement and professional development opportunities, while men with less seniority and education, and with no higher qualification than Wendy, were being given equal or greater responsibility and compensation.

73. As a result, Wendy became increasingly dissatisfied with her job and made complaints to her supervisor, who failed or refused to consider Wendy's grievances, all of which constituted a harassment, reckless indifference and further discrimination against Wendy.

74. On or about April 30, 2010, Wendy received notice from the EEOC in the form of a written letter which gave Wendy notice of the right to institute a civil action within 90 days after mailing of the notice.

75. As a direct and proximate result of Defendant's acts, Wendy has suffered economic damages and other losses.

76. Wendy has devoted a substantial portion of her work life to the employment of Defendant.

77. Due to age, Wendy's ability to obtain rights attached to seniority on jobs and possible retirement benefits has been severely compromised and diminished.

018270:5/14363-03:PLEADINGS
746321v5

78. Wendy has also suffered great economic harm in that during the 10 years she was employed by Defendant, the job advancement system resulted in a continuing discrimination, despite Wendy's efforts to achieve and advance.

79. Because of the damages sustained, Wendy is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages and lost retirement benefits pursuant to the provisions of Title VII and the ADEA.

80. All of the above-described conduct resulted in the constructive discharge of Wendy from which Wendy seeks recovery of damages.

81. The conduct of Defendant and its employees amounted to discrimination in the terms, conditions, and privileges of Wendy's employment in violation of Title VII.

82. The conduct of Defendant and its employees amounted to discrimination in violation of the ADEA.

83. Under federal statute, a plaintiff may recover punitive damages if the discriminatory conduct was (1) intentional and (2) engaged in with malice or with reckless indifference to the federally protected rights of the plaintiff.

84. Defendant intentionally engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of Wendy.

85. Defendant acted with malice and reckless indifference in the face of a perceived risk that its actions will violate federal law.

86. Pursuant to 42 U. S. C. § 1981a and Title VII, Wendy is entitled to compensatory and punitive damages.

### SECOND CLAIM FOR RELIEF

### (Employment Discrimination Under Arizona Law)

87. Wendy realleges and incorporates every allegation in the Complaint contained in the previous paragraphs of this Complaint; those allegations are incorporated by reference in this paragraph.

10

018270:5/14363-03:PLEADINGS
746321v5

88. Pursuant to Arizona Revised Statutes ("A.R.S.") § 41-1463, it is unlawful to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment based on gender, religion and/or age.

89. Defendant violated Arizona law by denying Wendy equal treatment provided to men under the age of 40.

90. Defendant violated Arizona law by denying Wendy equal opportunities for career advancement and professional development.

91. Defendant violated Arizona law by discriminating against Wendy based on her religion.

92. Defendant violated Arizona law by denying Wendy equal compensation commensurate with compensation offered to males of like education and experience.

93. The conduct of Defendant and its employees amounted to discrimination in the terms, conditions, and privileges of Wendy's employment in violation of Arizona law.

94. As a direct and proximate result of Defendant's intentional acts, Wendy has suffered economic damages and other losses.

95. Defendant intentionally engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the rights of Wendy protected by Arizona law.

**RELIEF REQUESTED FROM THE COURT**

WHEREFORE, Wendy requests that:

1. The Court grant Wendy a judgment against Defendant for $75,000.00 as compensatory damages;

2. The Court grant Wendy a judgment against Defendant for $250,000.00 as punitive damages in this case together with such other relief as the Court deems appropriate;

3. The Court award Wendy reasonable attorney's fees; and

11

018270:5/14363-03:PLEADINGS
746321v5

4.  The Court award Wendy costs and such other and further relief as appears just and equitable in the circumstances.

DATED this 29th day of July 2010.

**HYMSON GOLDSTEIN & PANTILIAT, P.C.**

/s/ David B. Goldstein
David B. Goldstein
Isidore Yetnikoff
14646 N. Kierland Boulevard, Suite 255
Scottsdale, Arizona  85254
Telephone:  480-991-9077
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff, Wendy Erdwurm hereby exercises her constitutional right and demands a trial by jury.

DATED this 29th day of July 2010.

**HYMSON GOLDSTEIN & PANTILIAT, P.C.**

/s/ David B. Goldstein
David B. Goldstein
Isidore Yetnikoff
14646 N. Kierland Boulevard, Suite 255
Scottsdale, Arizona  85254
Telephone:  480-991-9077
Attorneys for Plaintiff

HYMSON GOLDSTEIN & PANTILIAT, P.C.
Attorneys & Counselors
14646 N. Kierland Boulevard, Suite 255
Scottsdale, Arizona 85254
Telephone: 480-991-9077 / Facsimile: 480-443-8854

12

018270:5/14363-03:PLEADINGS
746321v5